**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOAN F.

                        Plaintiff,

- v -                                        1:17-CV-1066
                                                                   (DJS)

COMM'R OF SOC. SEC.,

                        Defendant.

**APPEARANCES:**                                  **OF COUNSEL:**

LAW OFFICES OF ANDREW GOLDBERG    ANDREW GOLDBERG, ESQ.
Counsel for Plaintiff
30 Fifth Avenue
Suite 10b
New York, NY 10011

U.S. SOCIAL SECURITY ADMIN.             ANDREEA L. LECHLEITNER,
Counsel for Defendant                         ESQ.
26 Federal Plaza
New York, NY 10019

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER[1]

      In this action, Plaintiff moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). Presently pending are Plaintiff's and Defendant's Motions for Judgment on the Pleadings pursuant to this Court's General Order 18. Dkt. Nos. 19 & 20. For the

---

[1] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 7 & General Order 18.

reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **granted** and Defendant's Motion for Judgment on the Pleadings is **denied**. The Commissioner's decision denying Plaintiff disability benefits is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Background

Plaintiff, born on April 22, 1968, filed an application for DIB on February 2, 2014, claiming an inability to work as of January 11, 2014, and a date last insured of September 30, 2017. Dkt. No. 10, Administrative Transcript ("Tr.") at pp. 32 & 64. Plaintiff alleged disability due to back, head, and neck impairments, anxiety, panic disorder, depression, degenerative disc disease, carpal tunnel syndrome, restless leg syndrome, and hypertension. Tr. at p. 290. Plaintiff completed three years of college, with the intent of obtaining a Registered Nurse degree. Tr. at p. 34. Plaintiff has past work as a desk clerk/cleaner and as a driver. Tr. at p. 189. On January 12, 2016, a hearing was held before Administrative Law Judge ("ALJ") Vincent Cascio. Tr. at pp. 26-62. Plaintiff was represented by counsel and testified at the hearing. *Id.* On May 23, 2016, ALJ Cascio issued an unfavorable decision finding Plaintiff not disabled. Tr. at pp. 7-25. On August 23, 2017, the Appeals Council concluded there was no basis to review the ALJ's decision, thus rendering the ALJ's decision the final determination of the Commissioner. Tr. at pp. 1-6. This action followed.

### B. The ALJ's Decision

ALJ Cascio first found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2017, and had not engaged in substantial gainful

activity since January 11, 2014, the alleged onset date. Tr. at p. 12. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar, thoracic and cervical spine, bilateral carpal tunnel syndrome status post bilateral carpal tunnel release surgery, restless leg syndrome, and anxiety. *Id.* The ALJ found Plaintiff's hypertension and gastroesophageal reflux disease to be non-severe. Tr. at p. 13. The ALJ next found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments, specifically considering Listings 1.04, 1.08, 11.01, and 12.06. Tr. at pp. 13-15. The ALJ determined that Plaintiff has a residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs; she can never climb ropes, ladders or scaffolds; and she can occasionally balance, stoop, crouch, kneel, and crawl. Moreover, she can have no exposure to unprotected heights or hazardous machines. Furthermore, she can frequently handle and finger with the bilateral hands and wrists. Lastly, the claimant can understand, remember and carry out simple, routine, repetitive work related tasks.

Tr. at p. 15. The ALJ next found that Plaintiff is unable to perform any past relevant work. Tr. at p. 19. The ALJ found that Plaintiff was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. *Id.* The ALJ next found that Plaintiff has at least a high school education and is able to communicate in English, and that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled, whether or not Plaintiff has transferable job skills. *Id.* The ALJ then found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff could perform, based on the testimony of a Vocational Expert ("VE"). *Id.* at p. 20. As such, the ALJ concluded that Plaintiff was not disabled during the period at issue. Tr. at p. 21.

### C. The Parties' Briefings on Their Cross-Motions

In her Motion, Plaintiff contends that the ALJ failed to fulfill his duty to develop the record. First, Plaintiff contends that the record is incomplete because it contains two MRI reports regarding Plaintiff's back that are not complete. Dkt. No. 19, Pl.'s Mem. of Law, pp. 7-9. Both MRIs are from January 19, 2016. One is labeled "MRI LUMBAR SPINE without contrast"; this MRI contains nearly a full page of text, which is cut off at the bottom. Tr. at p. 502. The second MRI is labeled "MRI CERVICAL SPINE without contrast" and consists of one page of text containing "findings"; this is page 1 of 2, and page 2 of 2 is missing from the record. Tr. at p. 501. Plaintiff contends that complete records are important to making a determination regarding the severity of her impairments. Pl.'s Mem. of Law at pp. 7-8. At the hearing, Plaintiff had not yet submitted these MRI records to the ALJ, and the ALJ indicated that Plaintiff's attorney should submit those records, stating that "I think it's important that we get those records from Dr. Perkins." Tr. at p. 60. Plaintiff therefore contends that these omissions constitute gaps that cannot be overlooked because the ALJ acknowledged the importance of these records in the hearing. Pl.'s Mem. of Law at p. 8. Plaintiff contends that the ALJ should have re-contacted Dr. Perkins to request the full MRI reports; without them, she argues, the evidence "is inadequate to permit a reasoned disability determination." *Id.* (quoting *Amrock v. Colvin*, 2014 WL 1293452, at *9 (N.D.N.Y. Mar. 31,

2014)).

Plaintiff asserts that having complete MRI reports may also alter the ALJ's determination as to whether her conditions met Listing 1.04. *Id.* at p. 9. In his determination, the ALJ found that Plaintiff's conditions did not meet or medically equal a Listing. Tr. at pp. 13-15. The ALJ referenced two sets of MRI reports in making the determination regarding Listing 1.04: an MRI from 2014, shortly after Plaintiff's accident, and Dr. Perkins' incomplete MRI reports from two years later. Tr. at p. 13. Plaintiff contends that she testified that her condition worsened over time, and as such, the more recent MRIs are critical to determining whether her condition meets Listing 1.04. Pl.'s Mem. of Law at p. 9.

Defendant contends in response that the ALJ was not required to develop the record further, because there was no gap in the administrative record: the ALJ had all of Plaintiff's treatment notes, and no crucial information was missing from the MRI reports, as they contained all of the findings. Dkt. No. 20, Def.'s Mem. of Law, pp. 12-13. Defendant contends that, in any event, an MRI alone would not be sufficient to establish a disability; while an MRI could show additional defects, it would not provide an opinion on Plaintiff's limitations. *Id.* at p. 13. Defendant additionally contends that the medical evidence shows that Plaintiff's pain actually got better as time went on. *Id.* at p. 14.

Plaintiff next asserts that it was error for the ALJ to not have determined whether the functional capacity assessment by Dr. Stamberg, Plaintiff's treating physician, was based on Dr. Perkins' MRI reports. *Id.* at p. 10. The ALJ gave little weight to Dr. Stamberg's opinion, finding it unsupported by the record; Plaintiff contends that it was error for the ALJ to find

it unsupported without knowing whether Dr. Stamberg had considered Dr. Perkins' reports; Plaintiff further contends that if Dr. Stamberg did not review the reports, the ALJ should have asked him to review them because, again, the ALJ said it was important to get that record at the hearing. *Id.*

In response, Defendant contends that Dr. Stamberg never identified the specific medical or clinical findings that supported his assessment, even though that information was requested eight times in the assessment form, and that the ALJ had no duty to re-contact Dr. Stamberg to ask for this information again. *Id.* at pp. 14-15. Defendant further contends that the ALJ's decision to give little weight to Dr. Stamberg's opinion was well founded. *Id.* at pp. 15-19.

Finally, Plaintiff asserts that the Vocational Expert's testimony does not constitute substantial evidence that there were jobs available in significant numbers that Plaintiff could perform. Plaintiff contends this is so because the VE did not describe the source of the numbers that she stated existed in the national economy for the jobs she found Plaintiff could perform. *Id.* at pp. 11-12.

Defendant contends that there is no support for Plaintiff's position that the ALJ has a duty to inquire into a VE's methodology for arriving at a number of jobs, and that Plaintiff's attorney did not challenge the VE about her methodology at the hearing, when he had an opportunity to do so. *Id.* at pp. 20-21.

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258. "If supported by substantial evidence, the Commissioner's finding must be sustained, even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 200 (N.D.N.Y. 2012) (citation omitted) (internal quotation marks omitted).

The ALJ must set forth the crucial factors supporting the decision with sufficient

specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Standard to Determine Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in substantial gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 416.920(b). If the claimant is not engaged in substantial gainful activity,

the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *Id.* at § 404.920(c).  If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, Part 404, Subpart P of the Regulations.  *Id*. at § 404.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467.  Where the claimant has such an impairment, the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity.  *Id.*  If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the RFC$^2$ to perform his or her past relevant work despite the existence of severe impairments.  20 C.F.R. §§ 416.920(e) & (f).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(g).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that

---

$^2$ "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is the most you can still do despite your limitations."  20 C.F.R. § 416.945(a).

the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 416.920(g); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### III. ANALYSIS

#### A. Incomplete MRI Reports

Plaintiff contends that the missing pages from two MRI reports from January 19, 2016 constitute a gap in the record and that it was therefore error for the ALJ to make a determination without obtaining the full MRI reports. Pl.'s Mem. of Law at pp. 7-9.

The ALJ's reliance on the incomplete MRI records in finding that Plaintiff's impairments did not meet or medically equal a Listing is troubling. In his determination, the ALJ found

> The claimant's degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication (Exhibit 3F, page 31 & Exhibit 10F).

Tr. at p. 13. The ALJ cites to three MRIs in making this Listing determination: a single-page

MRI from 2014 (titled "MRI THORACIC SPINE W/O CONTRAST"), and the two incomplete MRIs from 2016 (titled "MRI CERVICAL SPINE without contrast" and "MRI LUMBAR SPINE without contrast"). *Id.* Plaintiff contends that the missing pages constitute a gap because she testified that her condition worsened, and that the 2016 MRIs are therefore needed to analyze her more recent, deteriorated condition. Pl.'s Mem. of Law at p. 9. Although the record is far from clear that Plaintiff's condition worsened between 2014 and 2016, the missing information from 2016 could be relevant to the Listing requirements, and the ALJ's explicit reliance on these incomplete records is therefore problematic.

As such, the Court cannot say that utilizing incomplete MRIs as the basis for finding Plaintiff does not meet a Listing is harmless. Although "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination," *Santiago v. Astrue*, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (quoting *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009)), the ALJ's specific reliance on these incomplete records as the basis for finding Plaintiff does not meet a Listing cannot be overlooked. *Santiago v. Astrue*, 2011 WL 4460206, at *2. This is so even though Plaintiff failed to argue to the Appeals Council that the record was incomplete. *See Lay v. Colvin*, 2016 WL 3355436, *5 (W.D.N.Y. June 17, 2016) (affirming ALJ's determination and finding that the incomplete record was "largely a product of Plaintiff's own inaction, for which no explanations have been articulated"). Here, it is possible that information missing in the MRI could include a finding described in Listing 1.04. As such, the Court finds that this matter should be remanded to the ALJ to obtain a complete copy of the 2016 MRI reports and any

physician interpretation thereof.[3]

## B. Vocational Expert Testimony

Plaintiff also contends that the ALJ did not meet his burden at Step 5 because, although sources were elicited regarding the VE's findings of jobs Plaintiff could perform, sources were not provided regarding the number of those jobs that are available. Pl.'s Mem. of Law at pp. 11-13.

There is no established rule that an ALJ must ask a VE for the sources of the numbers she identifies when no objection is raised to those numbers. Indeed, "[a]n ALJ is entitled to credit the testimony of a vocational expert." *Vanterpool v. Colvin*, 2014 WL 1979925, at *20 (S.D.N.Y. May 15, 2014). The Second Circuit has stated that "evidence cannot be substantial if it is 'conjured out of whole cloth,'" *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 450-51 (2d Cir. 2012), but also that a VE's testimony is sufficiently supported when he "identifi[es] the sources he generally consulted to determine such figures." *Galiotti v. Astrue*, 266 Fed. Appx. 66, 68 (2d Cir. 2008). Although it is not the case that "an ALJ never need question reliability," *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d at 450, it remains unclear whether an ALJ must ask a VE for sources when there is no objection to the VE's testimony and there are no other concerns with the VE's testimony.

Here, Plaintiff was represented at her hearing and her attorney did not object to the

---

[3] Plaintiff also appears to contend that the ALJ should not have disregarded Dr. Stamberg's opinion as unsupported by the medical record because it may have been based on the incomplete MRI reports. Pl.'s Mem. of Law at p. 10. Plaintiff also contends that the ALJ was obligated to inquire whether Dr. Stamberg had reviewed the MRI reports in forming his opinion, and that if he had not, that he be asked to review the reports and then update his assessment accordingly. *Id.* In light of the Court's remand of this matter, Plaintiff may wish to request that Dr. Stamberg review the full MRIs from 2016 and any interpretation by Dr. Perkins and provide an updated medical source opinion.

VE's testimony. *See Torres v. Colvin*, 2014 WL 4467805, at *31 (S.D.N.Y. Sept. 8, 2014) ("At the administrative hearing [plaintiff's] attorney asked only two questions of the vocational expert, neither of which challenged the credibility of the source of the vocational expert's numbers"); *Tremblay v. Colvin*, 2014 WL 4745762, at *6 (W.D.N.Y. Sept. 23, 2014); *Barone v. Colvin*, 2016 WL 4126544, n. 9 (S.D.N.Y. Aug. 2, 2016); *Harvey v. Astrue*, 2008 WL 4517809, *16 (N.D.N.Y. Sept. 29, 2008) ("Plaintiff's counsel did not challenge the basis for the vocational expert's testimony and failed to raise any objection to the conduct of the ALJ until now.  Accordingly, the objections are forfeited.").

The Second Circuit has found that an ALJ meets her burden where the ALJ asks the VE to affirm that he will impartially evaluate the vocational evidence, and that if there is a conflict between his testimony and the Dictionary of Occupational Titles, he will advise the ALJ of those differences; where the plaintiff's counsel stipulates to the VE's expertise and qualifications; and where the plaintiff's counsel is given a full opportunity to cross-examine the VE, ask any questions, and explain any objections.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d at 450-51.  All of that occurred at the hearing in this case.

While it would have been best practice for the ALJ to ask the VE for the sources of her numbers to ensure they were properly supported, Plaintiff does not assert that the VE's numbers were incorrect or that substantial numbers of the jobs identified do not exist in the economy.  Pl.'s Mem. of Law at pp. 11-13.  As such, Plaintiff has not alleged that such error is not harmless.  *See Dugan v. Comm'r of Soc. Sec. Admin.*, 2011 WL 2009465, at *8 (D. Vt. May 23, 2011) ("[A]lthough the ALJ should have required the VE to supply the claimant

with the data underlying his conclusions, the error was 'entirely harmless' because the claimant had not challenged the validity of the VE's conclusions, and even if he had, the data underlying these conclusions would have had 'no meaningful bearing on the outcome of [the] case.'").

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision denying disability benefits is **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with the above; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties.

Date:  September 17, 2018
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge